NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EQUIOM (ISLE OF MAN) LIMITED (as Trustee of the Lausar Settlement Trust),<br><br>        Plaintiff,<br>v.<br><br>ROBERT JACOBS, et al.,<br><br>        Defendants. | Civil Action No.: 16-4362 (CCC-JBC)<br><br>OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the identical motions, (ECF Nos. 21-22) (collectively, "Mot. to Dismiss"), of Robert Jacobs ("Jacobs") and Robo Associates LLC ("Robo") (collectively, "Defendants"), to dismiss Counts Two and Five[1] of the Complaint, (ECF No. 1) ("Compl."), filed by Equiom (Isle of Man) Limited ("Plaintiff").[2] The Court has considered the submissions made in support of and in opposition to the instant motions. (*See* ECF No. 24 ("Opp'n"), ECF Nos. 25-26 (collectively, "Reply")). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons set forth below, Defendants' motions are **DENIED**.

---

[1] Defendants also initially moved to dismiss Count One of the Complaint. However, Plaintiff has since clarified that Count One of the Complaint is not directed at either Defendant Jacobs or Robo. (ECF No. 24 at 1). Defendants have dropped any claims with regards to Count One of the Complaint. (ECF Nos. 25-26 at 1).

[2] Defendants "note that Count Three of the Complaint asserts a claim for aiding and abetting fraud, which they believe is directed at them." (Mot. to Dismiss at 8 n.1). Defendants concede that, for the purposes of a motion to dismiss, "the aiding and abetting allegations are likely to be found sufficient to allege such a cause of action and therefore [Defendants] do not challenge [Count Three] at this time." (*Id.*).

1

## II. BACKGROUND

Plaintiff is a corporation, formed under the laws of the Isle of Man, which makes investment decisions for the Lausar Settlement Trust in its capacity as a trustee. (Compl. ¶ 4). Defendant Jacobs is a citizen of Connecticut who purportedly transacts significant business in the State of New Jersey. (*Id.* ¶ 5). In turn, Defendant Robo is a New Jersey limited liability corporation allegedly controlled by Defendant Jacobs. (*Id.* ¶ 7).

The crux of the instant dispute concerns non-party Metro Design USA, LLC ("Metro NJ"), a New Jersey limited liability company in which Plaintiff made a $500,000 financial investment, allegedly at the behest of Defendants' agent. (*Id.* ¶¶ 2-3). Plaintiff avers that Metro NJ was originally founded in 2007 by non-parties Warren Vogel ("Vogel") and Michael Coughlin ("Coughlin"), and was engaged in the business of marketing and selling various consumer products to "big-box retailers." (*Id.* ¶¶ 11-12). Plaintiff further alleges that beginning in 2014, Metro NJ began to experience significant financial difficulties and "was struggling to repay its debts to various creditors." (*Id.* ¶ 13). Around this same time period, Plaintiff contends that Defendants effectively "obtained majority control over Metro NJ's board of managers," which allowed Defendants to direct Metro NJ's operations, creditor payments, and investment funding. (*Id.* ¶¶ 15-17).

Plaintiff maintains that Defendants retained Defendant Corey Singman[3] ("Singman") to raise capital for Metro NJ, and that Defendants purposefully "directed Singman to solicit funds from [Plaintiff]" in exchange for a promised ten percent "finder's fee." (*Id.* ¶¶ 18-20). Plaintiff states that Singman duly contacted Plaintiff in December 2014, offering an investment opportunity

---

[3] On September 8, 2017, the Clerk of the Court entered default judgment against Singman in the amount of $500,000, plus interest. (ECF No. 33).

2

that "would be used to strategically restructure Metro NJ's business" in return for "ownership rights in a restructured business with strong potential growth." (*Id.* ¶¶ 22-23). Plaintiff further identifies a series of affirmative material misrepresentations Singman made, allegedly at Jacobs's behest, during conversations with Plaintiff's representative from December 19, 2014 through January 13, 2015. (*Id.* ¶ 27). Likewise, Plaintiff highlights a series of material facts that Singman purportedly concealed from Plaintiff in order to further induce Plaintiff's investment in Metro NJ. (*Id.* ¶ 30). Plaintiff avers that absent these misrepresentations and omissions, Plaintiff would not have invested in Metro NJ. (*Id.* ¶ 31).

Plaintiff additionally claims that Defendants induced Plaintiff's investment, knowing that it was impossible to effect a corporate restructuring of Metro NJ due to its debt load and contractual obligations. (*Id.* ¶ 25). Indeed, Plaintiff contends that "Metro NJ was effectively insolvent as of January 2015," as evidenced by its default on certain debt, and delinquency "in the payment of at least back taxes, salaries, rent, royalties, and utilities." (*Id.* ¶ 30). Nonetheless, Plaintiff avers that Defendants directed their counsel to draft investment documents, as well as ordered that Vogel and Coughlin, who were held out as controlling Metro NJ, sign the documents without material input or review.[4] (*Id.* ¶¶ 33-41). According to the terms of the investment documents, dated January 13, 2015, Plaintiff "invested $500,000 in Metro NJ in the form of a short term loan," which was to be converted "into a 35% ownership interest in a new successor entity" following a merger of Metro NJ into a new limited liability company. (*Id.* ¶¶ 42-43).

Plaintiff maintains that, following this investment, Defendants acted nefariously in at least two ways. First, Defendants caused Metro NJ to enter into a forbearance agreement with non-

---

[4] Plaintiff also alleges that Vogel and Coughlin personally guaranteed the $500,000 investment, though Defendants knew that Vogel and Coughlin "already made other personal guarantees well in excess of their combined net worth." (Compl ¶¶ 40-41).

party creditor AmRock, which agreement provided for Jacobs' personal "right to purchase Metro NJ's debt to AmRock for 90% of its value." (*Id.* ¶¶ 50-54). Second, Plaintiff claims Defendants engineered a fraudulent transfer of Metro NJ's assets to an unrelated entity controlled solely by Defendants. More specifically, Plaintiff alleges that the day prior to the signing of the investment agreement, Jacobs registered the entity "Metro DE" as a Delaware limited liability company.[5] (*Id.* ¶ 59). Plaintiff then alleges that Metro DE acquired "all of Metro NJ's assets—including its licenses, customer relationships, and contracts-for less than fair consideration" in or around April 2015. (*Id.* ¶ 60). Subsequently, Plaintiff claims that Jacobs caused Metro DE to change its corporate name to Loyd Harbor Partners LLC ("LHP")—the entity that Plaintiff alleges currently conducts Metro NJ's former business.[6] (*Id.* ¶¶ 65-67). Plaintiff contends that Defendants undertook this transfer of assets without informing Plaintiff or seeking Plaintiff's consent. (*Id.* ¶ 64).

Finally, Plaintiff avers that "[n]one of the principal on the $500,000 loan to Metro NJ has been repaid," that "none of the Default interest accruing on the principal . . . has been paid," and that Plaintiff never received any equity in any successor entity. (*Id.* ¶¶ 71-74).

## III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-

---

[5] Plaintiff states that Defendant Robo was the sole member of Metro DE as of June 2014, and Robo's sole member was Defendant Jacobs. (Compl. ¶ 61).
[6] On September 8, 2017, the Clerk of the Court entered default judgment against LHP in the amount of $500,000, plus interest. (ECF No. 33).

4

pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV. DISCUSSION

### A. Count Two: Breach of Fiduciary Duty

The three elements of a breach of fiduciary duty claim under New Jersey law include: "(1) the existence of a fiduciary relationship between the parties; (2) the breach of the duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach." *SalandStacy Corp. v. Freeney*, No. 11-3439, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012). The threshold inquiry in any breach of fiduciary analysis is, therefore, whether a fiduciary relationship exists between the parties. *See id.*

Defendants contend that no fiduciary relationship exists between the parties—rather, Defendants state they never had a "direct relationship" with Plaintiff, who chose to enter into a

"commercial business transaction . . . as a passive investor[.]" (Mot. to Dismiss at 11). While Defendants are correct that, under New Jersey law, "[d]irectors normally owe no duty to corporate creditors," there is an exception to the rule, namely that "when the corporation becomes insolvent [and] the creditors' investment is at risk . . . directors should manage the corporation in their interests as well as that of the shareholders." *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 635 (3d Cir. 2007). In other words, "[o]nce a corporation becomes insolvent . . . directors assume a fiduciary or 'quasi-trust' duty to the corporation's creditors." *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir. 2002) (citing *AYR Composition, Inc. v. Rosenberg*, 619 A.2d 592, 597 (N.J. Super. Ct. App. Div. 1993)). Once this quasi-trust relationships arises, "officers and directors cannot prefer one creditor over another, and they have a 'special duty not to prefer themselves.'" *In re Stevens*, 476 F. Supp. 147, 153 n.5 (D.N.J. 1979) (quoting *Portage Insulated Pipe Co. v. Costanzo*, 275 A.2d 452, 453 (N.J. Super. Ct. App. Div. 1971)).

Plaintiff's allegations regarding Metro NJ's insolvency, and Defendants' consequent fiduciary duty to Plaintiff, are sufficient to survive the motion to dismiss stage. Plaintiff alleges that Defendants exercised control over Metro NJ's board of managers during the time period relevant to this matter. (Compl. ¶¶ 15-16). Moreover, Plaintiff alleges that Metro NJ was "effectively insolvent and unable to meet its obligations as they were coming due" during the period in which Plaintiff's investment in Metro NJ was being negotiated. (*Id.* ¶¶ 30, 33-38). Indeed, Plaintiff plainly alleges that Metro NJ was "advised to file for bankruptcy" during the negotiation period. (*Id.* ¶ 30). Defendants, in turn, argue that Plaintiff's claim fails due to a failure to allege *actual* insolvency, as opposed to *effective* insolvency. (*See* Reply at 4). The Court, however, finds that this distinction is not fatal to Plaintiff's claim at this stage of the proceedings.

*See Engle v. Matrix Golf & Hosp. Phil., LLC*, No. 08-5831, 2009 WL 880680, at *6 (E.D. Pa. Mar. 31, 2009) (upholding claim on motion to dismiss where plaintiffs alleged that asset transfers left company unable to service its debt, rendering it effectively insolvent). The Court therefore declines to dismiss Plaintiff's claim for breach of fiduciary duty. *See Palladin Partners v. Gaon*, No. 05-3305, 2006 WL 2460650, at *17 (D.N.J. Aug. 22, 2006) ("Here, Plaintiffs allege that at all relevant times, [the company] was insolvent and that, therefore, Executive and Director Defendants owed [Plaintiff creditors] a fiduciary duty. While Plaintiffs must prove the allegation of insolvency at trial, their claims suffice to survive this motion to dismiss.").

**B. Count Five: Unjust Enrichment**

Unjust enrichment is a quasi-contractual remedy to prevent one party from unjustly benefiting at the other's expense, despite the lack of a formal, enforceable contract. *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004). "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). More specifically, a plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* Retention of a benefit without payment is not unjust unless "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Assocs. Comm. Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986) (quoting *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966)). Thus, unjust enrichment cases "involve[] either a direct relationship between the parties or a mistake on the part of the person conferring the benefit." *Fasching v. Kallinger*, 510 A.2d

694, 699 (N.J. Super. Ct. App. Div. 1986); *accord Castro*, 851 A.2d at 98.

Here, the parties dispute the extent to which New Jersey law mandates a "direct relationship" between the parties in order to state a claim for unjust enrichment. Defendants argue that the classic formulation of the doctrine of unjust enrichment requires a bright-line association, in which a plaintiff confers a "direct benefit" to a defendant for "expected remuneration." (Mot. to Dismiss at 11-12). Plaintiff argues, in contrast, that the modern formulation of the doctrine permits claims to go forward absent a direct relationship where the defendant is complicit in wrongdoing, or cannot otherwise credibly claim to be an innocent or remote third party. (*See* Opp'n at 10-14).

In *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192 (D.N.J. 2012*)*, a court in this District allowed an unjust enrichment claim to go forward against a defendant who allegedly falsely marketed a beverage as "all-natural." *Id.* at 199-201. The *Stewart* court examined the New Jersey Supreme Court's decision in *VRG Corp.* and the Appellate Division's decision in *Callano* and concluded that the "direct relationship" requirement "is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims[,]" and thus only protects "innocent third-parties." *Id.* at 200. The court reasoned that the defendant's false marketing campaign, "which included the use of product packaging, taxi cab signboards, billboards, the Internet, and print publications specifically designed to entice consumers to buy [defendant's product]" meant it was not an innocent third party and thus gave rise to a sufficiently direct relationship with consumers. *Id.*

While *Stewart* is most commonly applied in the context of consumer litigations against manufacturers, courts in this District have extended its reasoning to other contexts. For example,

in *Capital Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, (D.N.J. Feb. 27, 2017), plaintiff Capital Health brought suit against, *inter alia*, Dr. Veznedaroglu, a neurosurgeon formerly employed by Capital Health as well as Drexel University. (*Id.* at *1). Capital Health alleged that, after Dr. Veznedaroglu's termination, he and Drexel University "began to use improper means to access confidential information from Capital Health, violated [a] nonsolicitation provision by interfering with various contracts of which Capital Health was a party, and 'stole[ ]' the Transfer Hotline," a toll-free hotline number created by plaintiff to "allow physicians in New Jersey and Pennsylvania to contact an on-call Capital Health neurosurgeon who can transfer the patient to Capital Health." (*Id.* at *1-2). The court initially noted that, as to Capital Health's unjust enrichment claim, "[t]his District has interpreted New Jersey's 'direct relationship' requirement as unnecessary where it can be demonstrated that the defendant is not merely an innocent third party." *Id.* (citing *Stewart*, 877 F. Supp. 3d at 196-201). The court therefore denied defendants' motion to dismiss plaintiff's claim on grounds of an insufficiently direct relationship where, "as in *Stewart*, the [defendants] were all allegedly involved in perpetuating the purported fraud in connection with Transfer Hotline." (*Id.* at *11).

The Court finds Plaintiff's reliance on *Stewart* persuasive. While Defendants couch *Stewart* as a "narrow exception" that applies only to "consumer/manufacturer" litigations, the Court finds that *Stewart*'s broader reasoning applies in this instance. Here, Plaintiff avers that Defendants received a direct benefit of "at least an undisclosed $18,100 in cash from Equiom's investment." (Compl. ¶ 27). Plaintiff further contends that Defendants received an even more substantial benefit in the form of Metro NJ's assets, including the remainder of Plaintiff's $500,000 investment, which was allegedly improperly transferred to an entity under Defendants' sole control. Plaintiff additionally maintains that Plaintiff has not received the promised remuneration

9

of a 35% equity stake in a newly formed corporate entity, nor has Plaintiff's loan been repaid. (Compl. ¶ 74). These factual allegations alone support a denial of Defendants' motions at this stage of the proceedings. *See Swift v. Pandey*, No. 13-650, 2014 WL 1745040, at *9 (D.N.J. Apr. 30, 2014) ("Even if Xechem did not expect to be paid back at the time it lent money to Xechem India, a claim for unjust enrichment will survive dismissal when Plaintiff demonstrates that 'if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'" (quoting *Stewart*, F. Supp. 2d at 196)). Moreover, Plaintiff plausibly contends that Defendants orchestrated this wider fraudulent scheme—removing Defendants from the class of innocent, attenuated third parties the direct relationship requirement is intended to protect. *See Capital Health*, 2017 WL 751855, at *11. As such, dismissal of Count Five is not warranted.

## V. CONCLUSION

Defendants' motions to dismiss Counts Two and Five of Plaintiff's Complaint are denied. Plaintiff has stated plausible claims for both breach of fiduciary duty and unjust enrichment under New Jersey law. An appropriate Order accompanies this Opinion.

Date: December 22, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**